PRICE B. ROBINSON, Respondent, v. CHARLES LOWE, Appellant.

Kansas City Court of Appeals, February 3, 1913.

1. REAL ESTATE BROKERS: Commission. Plaintiff sued to recover a real estate agent's commission from the defendant, which was promised him for procuring a satisfactory buyer, who was ready and willing to buy the defendant's premises. Plaintiff procured a suitable party who entered into a contract to buy the premises from the defendant, made some payments, and then defaulted, because he lost his employment. *Held*, that the plaintiff performed his duty according to the terms of his employment and thereby became entitled to receive the agreed compensation for his services.

2. ———: Sales: Buyer and Seller. To constitute a sale there must be such an agreement between the seller and buyer as can be expressed in law. An option to buy with only the penalty of a forfeiture in case of nonperformance is in no sense a sale.

3. ———: Ready and Willing Buyer: Option. An agent employed to procure a purchaser who is ready, willing, and able to enter into an unconditional contract to purchase the land on the terms proposed by the owner, does not perform his contract and become entitled to payment of the stipulated commission by producing a purchaser ready, willing and able to enter into a mere option contract for the purchase of the land.

Appeal from Johnson Circuit Court.—*Hon. A. A. Whitsitt,* Judge.

AFFIRMED.

*Jas. A. Kemper* for appellant.

*R. M. Robertson* for respondent.

JOHNSON, J.—This is an action to recover a real estate agent's commission. The petition alleges that defendant, the owner of a house and lot in Warrensburg, employed plaintiff "to sell or to assist him in selling said house and lot on what is commonly known as the 'installment plan;' that is, the purchaser was to enter into a contract with said defendant Lowe by which he was to agree to pay a certain sum on the first day of each and every month thereafter until the full consideration or selling price of said house and lot, that is, the sum of twenty-six hundred dollars, was fully paid; and for and in consideration of said services of said plaintiff in selling, or assisting said defendant in selling said house and lot on the 'installment plan' as aforesaid, the defendant agreed and promised to pay plaintiff the sum of one hundred dollars."

Then follow allegations that plaintiff performed the contract and that his demand for payment of the commissions was refused. The prayer is for the recovery of the agreed commission. The action originated in a justice court and no formal answer was filed by defendant. A trial of the cause in the circuit court resulted in a verdict and judgment for plaintiff. Defendant appealed.

Defendant, a contractor and builder in Warrensburg, employed plaintiff, a justice of the peace and real estate broker, to sell a lot on which defendant was building a dwelling house. The terms of the contract, which was not reduced to writing, thus are stated

by plaintiff: "I said, 'Have you this property to sell on the installment plan?' He said he would. I said 'Mr. Lowe, I am going to try to sell this property for twenty-six hundred dollars and if I make the deal, why I want a hundred dollars.' He said, 'Very well, if you will get me a contract that I will accept I will pay you the hundred dollars.' "

Afterward plaintiff introduced R. P. McCuiston, a traveling salesman, to defendant and negotiations were entered into for the sale of the property to McCuiston for $2600. McCuiston had no ready money but was employed on a salary that would enable him to pay fifty dollars per month on the purchase price. On January 10, 1911, defendant and McCuiston entered into a written contract of sale of which the following were the principal provisions:

"The price of the said lot and improvements thereon, completed to the extent hereinafter specified, is $2600 with interest on deferred payments at the rate of six per cent per annum until paid. Payments to be made as follows: $25 this day, and $25 on Feb. 1, 1911, and $50 on the first day of March, 1911, and $50 on the first week day of each succeeding month thereafter, until the whole sum of $2600, and interest thereon shall be paid.

"At the end of the first six months interest for the said six months on $2600 shall be added to the principal, and the sum of all payments made during six months shall be deducted and the remainder shall be the new principal, and the same course shall be taken at the end of each succeeding six months.

"And it is agreed that if the said party of the second part shall at any time become delinquent in the payment of five installments of $50 each, then at the option of the said Lowe this contract of sale may be held as annulled or forfeited, and the said Lowe may hold all the money theretofore paid him, as liquidated damages, and as rents past due and he, Lowe,

or his assigns may. recover possession of said premises.

"And it is further agreed that. whenever the balance due on said real estate shall be reduced to the sum of $2000 then at the option of said party of the second part, the said Lowe shall convey the said lot to the said party of the second part and accept a trust deed thereon securing to him payment of the balance of the said purchase money and interest.

"And as a part of this contract, the said Lowe is to complete the house and improvements on said lot to the following extent; and substantially in the same manner as they are in the house built by the said Lowe, now occupied as a residence by Henry Rosenthal and family, these finishing improvements to consist of bath room fixtures and furnace and electric light drops and meter, and the papering of the rooms except the ceiling upstairs; the paper not to cost over an average of nine cents per roll; and to paint the woodwork inside with three coat work when the weather is suitable to put one coat on the outside of the house. He is also to clear the lot of any unsightly rubbish, and to fence off the back part by a wire fence four feet high.

"The said party of the second part shall also pay for reasonable insurance on the residence building, and shall pay the taxes on said lot, payable in the fall of 1912 and thereafter.

"When the deed is required from said Lowe he shall also furnish at the same time an abstract of title down to date. The parties of this contract bind themselves, their heirs and assigns to each other and to each other's heirs and assigns, for the performance of all of its terms. In other words this contract is assignable and transferable by either party.

"The said party of the second part has the right to pay on said consideration more than $50 at any pay-

ment to be credited at the end of the term of six months.

"The said furnishing improvements to all be completed by March 1, 1911, except the coat of paint on the outside so that possession can be taken by the said second party by that date."

McCuiston paid $25, when the contract was signed, $25 on Feb. 1 and $50 on March 1st following. He and his family moved into the house on the last mentioned date and occupied it as their residence five months when they moved out. McCuiston made no monthly payments after March 1st and defendant declared the contract forfeited. It appears that shortly after moving into the house McCuiston lost his situation and thereby was deprived of the means of performing the contract.

We have stated the facts in evidence which are most favorable to plaintiff since we find the questions of law presented by defendant for our determination will be answered in what we shall say on the subject of the demurrer to the evidence which defendant contends should have been given.

The gist of the argument of counsel for defendant is that plaintiff was employed to procure a purchaser who was ready, willing and able to buy the property on the terms proposed by defendant and that he did not perform the obligation of his contract of employment by procuring a purchaser who was ready, willing and able only to enter into an option contract for the purchase of the property. "To constitute a sale," say counsel in their brief, "there must be such an agreement between the seller and the buyer as can be expressed in law. An option to buy with only the penalty of a forfeiture in case of nonperformance is in no sense a sale." [Citing Zeidler v. Walker, 41 Mo. App. 118; Reiger v. Bigger, 29 Mo. App. 421.]

It is held in both of these cases and is a rule of general acceptation that an agent employed to pro-

cure a purchaser who is ready, willing and able to enter into an unconditional contract to purchase the land on the terms proposed by the owner does not perform his contract and become entitled to payment of the stipulated commission by producing a purchaser ready, willing and able to enter into a mere option contract for the purchase of the land.

But those cases do not hold nor can any authority be found in support of the proposition that a real estate owner may not employ an agent to procure a purchaser who will enter into an optional or conditional contract to purchase acceptable to the owner. It is a matter of common knowledge that the business of selling real estate on monthly payments to people of limited means in salaried positions has become quite general, especially in cities. Usually such sales are made to persons who would be unable to respond in damages for the breach of an unconditional contract of sale; hence the resort to forfeiture contracts which allow the vendor to retain paid installments as liquidated damages and exonerate the defaulting vendee from further liability. An agent employed to procure a purchaser on such terms on an agreement that he shall receive a stated commission for such service when a contract acceptable to his principal is executed by the purchaser, performs his contract when he does the very thing it requires of him and becomes entitled to his reward. McCuiston was not ready, willing and able to enter into and perform an unconditional contract of sale but was qualified as the vendee of an installment contract. His subsequent disability caused by losing his situation was one of the contingencies the forfeiture clause of the contract was intended to cover for the protection of defendant, and defendant voluntarily took the risk of loss from such contingencies. The whole case may be summed up in the observation that defendant employed plaintiff to perform a special task; plaintiff performed it according to the

terms of his employment and thereby became entitled to receive the agreed compensation for such services.

The learned trial judge took a proper view of the law of the case in overruling the demurrer to the evidence. The record discloses the cause was tried without substantial error.

The judgment is affirmed. All concur.